```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

------------------------------X  Docket#
UNITED STATES OF AMERICA,     :  20-CR-65-ERK-SMG
                              :
                              :
    - versus -                :  U.S. Courthouse
                              :  Brooklyn, New York
                              :
OMAR WESLEY,                  :  March 3, 2020
          Defendant           :  2:18 PM
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PROCEEDING
BEFORE THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

For the Government:        **Richard P. Donoghue, Esq.**
                           United States Attorney

                     BY:   **Nathan Reilly, Esq.**
                           Assistant U.S. Attorney
                           271 Cadman Plaza East
                           Brooklyn, New York 11201

For the Defendant:         **Mark S. DeMarco, Esq.**
                           Law Offices of
                           Mark S. DeMarco
                           3867 East Tremont Avenue
                           Bronx, New York 10465

Transcription Service:     **Transcriptions Plus II, Inc.**
                           61 Beatrice Avenue
                           West Islip, New York 11795
                           laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

                                                                    2
                         Proceedings
1            THE CLERK:  Criminal Cause for a Bail
2    Application in 20-cr-65, United States of America v. Omar
3    Wesley.
4            Counsel, please state your appearances.
5            MR. REILLY:  Good afternoon, your Honor.
6            Nathan Reilly for the United States.
7            THE COURT:  How do you do?
8            MR. DEMARCO:   Mark DeMarco for Mr. Wesley.
9            Good afternoon, your Honor.
10           THE COURT:  Hi, Mr. DeMarco.
11           Mr. Wesley, do you speak and understand
12   English?
13           THE DEFENDANT:  Yes, sir.  Good afternoon.
14           THE COURT:  Good afternoon.
15           So I take it that Mr. Wesley has already been
16   arraigned on the indictment?
17           MR. DEMARCO:  Yes, your Honor.
18           MR. REILLY:  Yes, your Honor.
19           THE COURT:  And we're here today because he
20   would like to apply for release?
21           MR. DEMARCO:  Yes, your Honor.
22           THE COURT:  I will hear your application.
23           MR. DEMARCO:  Thank you, Judge.  Your Honor, I
24   want to start off my application by giving you a little
25   bit of history with respect to Mr. Wesley.

3

Proceedings

1  On December 20th of 2019, this past year, a few
2 months ago, Mr. Wesley resolved two felony indictments in
3 New York Supreme Court in Manhattan.  He pleaded guilty
4 in exchange for an agreed upon three-to-six year
5 sentence.
6  On that very same day, the supreme court judge
7 or justice in New York County released Mr. Wesley on his
8 own recognizance, and set a sentencing date for March
9 26th, 2020.  Now she released, or the judge released Mr.
10 Wesley to give him the opportunity to take care of some
11 personal affairs, which included the recent death of an
12 aunt, and wrapping up her estate, and also spend some
13 time with his three young daughters.  He has two five-
14 year-old twins -- daughters, and a five-month-old infant
15 daughter.
16  Now the judge in New York County took a chance
17 on Mr. Wesley, I'm presuming based on his lack of a
18 warrant history, based on his behavior based on those two
19 cases, and based on a conclusion that he was neither a
20 risk of flight, nor a danger to the community.
21  THE COURT:  Can you explain to me what you mean
22 by "his behavior" in those two cases, if you have
23 something specific in mind?
24  MR. DEMARCO:  I don't have anything specific in
25 mind, your Honor.  I'm just drawing on my experience in

Proceedings 4

state court that it's extraordinary circumstances will only explain why a supreme court judge will release someone from detention after pleading guilty to a prison sentence. So I am assuming there was something that the judge was satisfied with. Maybe Mr. Wesley's acceptance of responsibility, maybe his behavior before that court leading up to the guilty plea, that's all I can -- I'm just speculating, Judge.

THE COURT: I'm sorry. I thought you were referring to something more specific.

MR. DEMARCO: That's all right.

THE COURT: Please go ahead.

MR. DEMARCO: Now, so basically we're here today, Mr. Wesley is here today, requesting that this court approve or set up a bond in the amount of $50,000. That's the same amount of the bond set for his co-defendants, Mr. Krigger and Officer Hernandez (ph.).

Mr. Wesley just wants 23 days of freedom, so that he can spend time with his three young children, so that he can assist his family to wrap up the estate of his aunt, before he steps in on March 26th and then finishes that three-to-six year sentence.

I want to first say he's not a risk of flight, and he was born in this city. He's lived here pretty much his entire life. I have spoken to his mother on the

Proceedings 5

1 phone several times. She lives in Manhattan. Mr. Wesley
2 will be permitted to return to her apartment should he
3 satisfy the conditions of bail.
4     It's important to note that he was arrested in
5 this case roughly one month after his release in the
6 Manhattan cases, and he was still in the community. He
7 didn't flee from that three-to-six year sentence, which I
8 believe is an important factor for this Court to
9 consider.
10     Now I expect the government to bring up the
11 fact that on the date of his arrest, Mr. Wesley attempted
12 to flee the arresting officers, and this is what I would
13 like to report to this -- to your Honor.
14     He wasn't fleeing from arresting officers. He
15 was fleeing from strangers who jumped out of a vehicle,
16 and as they started chasing him, he observed a handgun
17 fall to the ground. They were in plainclothes, according
18 to Mr. Wesley, and he ran from strangers who were armed
19 with guns.
20     Now I believe based on the allegations set
21 forth in the indictment, and the complaint, he's not a
22 danger to the community as well. He's a 37-year-old
23 citizen of this country. He has three daughters. He
24 wants the opportunity, like I said earlier, to spend some
25 time with them, and to handle the family business

Proceedings

6

1 discussed earlier.
2           Now your Honor, I have been in touch with
3 several people, including Mr. Wesley's mother, some
4 financially responsible, others, people of moral suasion,
5 such as his mother.
6 (Counsel and client confer)
7           MR. DEMARCO:  We have one member of his family
8 here who according to Mr. Wesley, is willing to act as a
9 surety on a bond if set by this Court.
10          As I said earlier, we're asking for a bond
11 similar to the bond set on his co-defendants, simply for
12 a 23-day period to give Mr. Wesley an opportunity to
13 spend time with his family.  He will subject himself to
14 strict pre-trial supervision.  He would surrender any
15 passport, not apply for any travel documents.  He'll
16 remain in the Eastern and Southern Districts of New York.
17 He would do pretty much anything required in order to
18 spend those last 23 days with his family.  Thank you,
19 Judge.
20          THE COURT:  Can I ask you a few questions?
21          MR. DEMARCO:  Yes, your Honor.
22          THE COURT:  How old did you say those young
23 daughters were?
24          MR. DEMARCO:  He has five-year-old twins, and a
25 five-month-old infant daughter.

7

Proceedings

1  THE COURT: And what is the date of his arrest
2 on the charges that are before this Court?
3  MR. DEMARCO: January 24th of 2020 was the date
4 of his presentment, and -- his initial presentment, your
5 Honor.
6  THE COURT: And what is the date that he was
7 sentenced and released on his own --
8  MR. DEMARCO: January 20th -- I mean, I'm
9 sorry, December 20th, 2019.
10  THE COURT: Is there any reason to think that
11 the state court judge knew at the time of that release
12 that there was probable cause to believe that Mr. Wesley
13 was bribing a correction officer to arrange to have
14 illegal drugs smuggled into Rikers Island?
15  MR. DEMARCO: There is no reason to believe
16 that, your Honor.
17  THE COURT: Thank you.
18  MR. REILLY: Your Honor, I want to add some
19 additional information with respect to Mr. Wesley's
20 flight on the day of his arrest. I think it's worth
21 noting that there was a large takedown in this case
22 approximately a week-and-a-half, January 14th, in
23 which --
24  THE COURT: A week-and-a-half?
25  MR. REILLY: Prior to his arrest, I'm sorry, so

Proceedings

8

1  January 14th, in which two co-defendants were arrested.
2  Mr. Wesley's name was redacted in that particular -- in
3  that charging document.  There were other individuals
4  charged on multiple complaints, but on the complaint that
5  he's on, his name was redacted.  I don't think it was
6  difficult to determine who he was, but we're not relying
7  on that, your Honor, because shortly after that arrest,
8  agents went to his mother's house, spoke to his mother.
9  She placed him on the phone with an individual who
10 represented himself to be Mr. Wesley.  They identified
11 for him the fact that there was a warrant for his arrest,
12 and that he should turn himself in.  He assured -- they
13 identified themselves as being from the FBI, and that the
14 case was out of the Eastern District.  He assured them
15 that he intended to do so, and lo and behold, he didn't,
16 in fact, turn himself in.
17          Contrary to the representations made by
18 counsel, I've spoken to the individuals who were part of
19 the arrest team that day, who have informed me, and I
20 proceed by proffer in this manner, that they were wearing
21 police jackets, announced themselves as police, when they
22 asked Mr. Wesley to stop.  He identified -- he saw them,
23 and elected to flee on foot, and was apprehended in the
24 street as part of the arrest.
25          So I think that in and of itself indicates that

Proceedings

1  he is a flight risk, notwithstanding the fact that he was
2  committing this crime while he was incarcerated on the
3  charges that he resolved in December, and while I
4  acknowledge that he was in the community, it is a very
5  real fact that not only is he facing three-to-six years
6  per the terms of his plea agreement with New York County,
7  but he also faces significant exposure here, your Honor,
8  not because the drug weight is particularly high, or that
9  the amounts of -- or for that matter, because the amount
10 of the bribe is particularly large, two factors which
11 would tend to -- for an individual with zero criminal
12 history, would result in a not -- not significant term of
13 incarceration, but he's got a substantial criminal
14 history.
15          I confess, your Honor, I haven't run it but I
16 think just from my review of the pre-trial services
17 report, it's going to be a criminal history category
18 four, five, six -- he's going to face a substantial
19 enhancement to his sentence, and at least his guidelines
20 exposure by virtue of the fact that he has these prior
21 convictions, all of which stands when coupled with an
22 existing three-to-six year state crime, which would not
23 be -- which, you know, is for a completely different set
24 of crimes, I say that coupled with how he reacted to
25 agents makes him a flight risk, and makes it appropriate

```
                                                                    10
                             Proceedings
 1   that he continue to be remanded.
 2             THE COURT:  Do you wish to be heard further?
 3             MR. DEMARCO:  Just briefly, Judge.
 4             THE COURT:  Take your time.
 5             MR. DEMARCO:  When Mr. Wesley got on the phone
 6   to speak to the agents when -- at his mother's apartment,
 7   he simply asked for additional time to spend with his
 8   children, as he is doing here --
 9             THE COURT:  Yeah.
10             MR. DEMARCO:  -- before this Court today.
11             THE COURT:  Got it.  Well, when I first looked
12   at Mr. Wesley's rap sheet and I saw on the first page a
13   violent felony offense, of course it gave me pause, but
14   then I realized he was only 17, and it was 20 years ago,
15   so I was hoping that I would see a sharp drop-off in
16   violent criminal behavior, as he aged out of that high-
17   demographic category for violent crime.  Unfortunately, I
18   didn't.
19             He continued to engage in criminal conduct,
20   based upon his record of convictions, well into his
21   thirties where he has two violent offenses in 2015, and
22   another in 2017.
23             I am struck by the argument that the judge in
24   state court was moved by Mr. Wesley's family
25   circumstances to grant him a period of time at liberty,
```

11
Proceedings

1  but there are things that the judge didn't know when
2  making that decision.  Those included that there was
3  probable cause to believe that Mr. Wesley committed
4  another felony while incarcerated at Rikers Island, and
5  one that involved public corruption.
6             And while I moved to think about the fact that
7  Mr. Wesley has a five-month-old child, I'm also struck by
8  the fact that it was approximately five months ago that
9  these crimes were committed, or that the crimes for which
10 he stands indicted are alleged to have been committed,
11 which suggests that Mr. Wesley put his desire to smuggle
12 drugs into the prison above his family responsibilities
13 at the very time that his child's mother was delivering
14 their baby.
15            So I am not as moved by his personal family
16 circumstances as I might be were these background facts
17 different.
18            Under Section 3148 of Title 18, there's a
19 rebuttable presumption calling for detention when someone
20 commits a federal, state, or local crime while on
21 release.  I think one can only imagine that the drafters
22 of that legislation would be more concerned with someone
23 who commits a federal, state, or local crime while in
24 custody.
25            Is there a permanent order of detention

Proceedings

1  outstanding?
2          MR. REILLY:  There is, your Honor.
3          THE COURT:  It remains in place.  Thank you for
4  your application, Mr. DeMarco.
5          MR. DEMARCO:  Have a nice day.
6                  (Matter Concluded)
7                       -o0o-

13

# C E R T I F I C A T E

      I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

      I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

      IN WITNESS WHEREOF, I hereunto set my hand this **31st** day of **March**, 2020.

                                      *Linda Ferrara*
                                      Linda Ferrara

                                      AAERT CET 656
                                      Transcriptions Plus II, Inc.